IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| DENNIS BENSON, LICENSED | ) | |
| GENERAL REAL ESTATE | ) | |
| APPRAISER; JEFF | ) | |
| FLETCHER, LICENSED | ) | |
| GENERAL REAL ESTATE | ) | |
| APPRAISER; THOMAS | ) | |
| SPEARS, ASA, MRICS | ) | |
| On Behalf of themselves, And he | ) | |
| Putative Class They Seek to | ) | |
| Represent, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. |
| | ) | |
| THE INTERNAL REVENUE | ) | 2:21-cv-00074-RWS |
| SERVICE, US DEPARTMENT | ) | |
| OF THE TREASURY, CURRENT | ) | |
| EMPLOYEE OF THE IRS | ) | |
| IDENTIFIED AS "CAMPAIGN | ) | |
| EXECUTIVE CHAMPION" | ) | |
| CONSERVATION TASK FORCE, | ) | |
| Members/conspirators named and | ) | |
| Unnamed, IRS Agent, MELISSA L. | ) | |
| ISHEE, IRS Agent, DAVID ABLES, | ) | |
| IRS Agent, TOMMY WALDROP; | ) | |
| IRS Agent, MICHELE MARCH, | ) | |
| IRS Agent, IFEOMA OKEKE; and | ) | |
| JOHN/JANE DOES 1-15 | ) | |
| Individually and in their official | ) | |
| Capacity as IRS officers/agents, | ) | |
|     Defendants. | ) | |
| _____ | ) | |

**<u>COMPLAINT</u>**

COME NOW the Plaintiffs, on behalf of themselves and the class they seek to represent, and for their suit against the Internal Revenue Service, the United States Department of the Treasury, and current and former employees of the Internal Revenue service, IRS, Members/conspirators named and unnamed of the CONSERVATION EASEMENT TASK FORCE, it's "Campaign Executive Champion; IRS agents, Melissa L. Ishee; David Ables; Tommy Waldrop; Michele March, and Jane/John Doe 1-15, state as follows in support of said complaint:

## **SUMMARY OF THE CLAIM**

1.

This is a class action against the United States Internal Revenue Service and certain of its officers both identified above and yet to be identified.  The plaintiffs are each members of a class of persons who have suffered damages as a result of their decision to provide appraisal services, qualified appraisal reports and opinions to be filed with IRS form 8283 in conjunction with the donation of a restrictive easement, called a conservation easement under Section 170 (h), to a recognized (qualified charitable organization such as a 501 (c) (3) land trust, which affects the permanent preservation of the land in its natural condition.  However, under the pain of denial of any such deductions, the IRS and its agents, especially those who

are members of the Conservation Easement Task Force and it conspirators, named and unnamed, under the direction of the "Campaign Executive Champion" singled out the class of donors the IRS labels in their correspondence and allegations as "syndicated easement donations".[1]

The IRS singled out this group of taxpayers for extensive and intrusive scrutiny probing the donating LLC's members, their intentions and beliefs, demanding records which the IRS already possessed, unilaterally assessing penalties to appraisers while unilaterally claiming excessive valuation when the IRS knew or should have known that a fair, impartial, and accurate assessment of valuation would not warrant penalties. The IRS issued voluminous subpoenas to class members for documents it already had in its possession resulting in undue burden and expense on class members. The IRS through its "Campaign Executive Champion" set up a task force to audit every "syndicated" easement from the years 2016 through the present.[2] The pattern and practice for these audits and similar investigations has been for the IRS to conduct an audit and or investigation at great expense to the plaintiffs, request an extension to continue the examination and the

---

[1] Per the IRS "Syndicated Easement Donations" are those donations where a group of persons partner together to purchase a controlling interest in real property. The partners will then fully evaluate and decide whether to develop the property, hold it for investment or donate the development rights to a qualified land trust thereby conserving the land from development in perpetuity pursuant to 26 U.S.C. § 170 (h).

[2] IRS Agent Ishee confirmed that all 2016 and 2017 donations would be audited in the IDR interview of Ryan Cotton taken June 11, 2019 and transcribed by Debora J. Puckett, CCR at the offices of the IRS, 329 Oak Street Gainesville, GA 30501. It is the information and belief of plaintiffs that this directive has been extended to include Tax years 2018 and 2019 at least.

audit over a deliberately extended period of time.[3]  Subsequent to the taxpayers'

expenditure of immense time and expense in audit defense, the universal and pre-

ordained result is an official determination  in lock step with the IRS' original

intent of returning a zero valuation for the donation  and penalties to the appraiser,

thereby, forcing the entire process to begin again in the US Tax Court and

collection procedures for the appraiser.[4]  After the hugely burdensome expense of

audit and tax court litigation, 87% of the concluded cases have been resolved

without taxpayer penalty with 80% of the deductions claimed sustained by the

Courts in favor of the easement donors.[5]  This conduct by the IRS deliberately

undermines Congress' policy of encouraging conservation by providing tax

benefits for conservation easement donations.  The IRS has unequivocally

indicated that it intends to continue, and even increase, these contravening

practices—see attached IRS notice. (see exhibit G.)  The increased attack directly

contradicts Congressional intent to encourage a valuable public benefit through

stifling and eliminating conservation easement donations by anyone other than the

---

[3] These extensions are obtained under the pretense of further evaluation. Though form 872 is often executed no further evaluation is made. In the cases if further evaluation is conducted, it consists of duplicitous requests for information already in IRS possession.  Thereby imposing additional unnecessary burden and expense on taxpayer
[4] See spreadsheet supporting almost 100% request for additional time followed by 0 value.
[5] See empirical study attached as Exh B).  Compare the DOJ Criminal win rate of 99% to that of DOJ Tax regarding these easement donations of 13% and it is reasonably foreseeable to conclude that the easement donation cases are improperly evaluated at best and brought as an effort to undermine the public purpose of encouraging land conservation under §170(h).

handful of exceptionally wealthy landowners who can both benefit from the donation tax deductions and have qualifying land assets they are willing to donate.[6] Plaintiffs are witnesses in each and every one of these attacks.  A charitable contribution of over $500.00 must be supported by an appraisal.  Each plaintiff and the class it purports to represent have been independently hired to deduce an opinion as to the value of the subject property at its highest and best use.  The resulting report must address the determination and feasibility of the highest and best use and follow USPAP guidelines in opining appropriate valuations through the use of market comparables and established appraisal methodologies.  Since tax year 2016, deductions under 26 U.S.C.§ 170 (h) are subjected to audit in every case that involves partnerships claiming the Congressionally mandated tax incentives for their donations.  The appraiser thus also becomes an essential witness in the valuation audit and has become the primary target of IRS attack. Unilateral uncorroborated §6695A penalties against all CE appraisals including fee simple donations valuing land at zero interfere with due process in federal courts through the self-serving uncorroborated blanket discreditation of appraisers

---

[6] The attached link is one simple method of calculating the public benefit of conservation.  Using this calculator (www.treebenefits.com/calculator/index.cfm) a parcel containing 1000 acres of 10" pine trees (100 per acre) in middle GA would generate a public benefit of approximately 4.3 million dollars per year.  Over 30 years that is well over 100 million in public benefits with 4.2 million per year of benefits preserved in perpetuity as set forth in the easement deed.  A 1500-acre parcel currently under challenge by the IRS resulted deductions of less than 1/3 of the 30 year value to the public and assuming a 40% tax rate the citizens receive 100+ million in public benefit for 20 million dollars in the first 30 years and an additional 100+ million in public benefit each 30 years thereafter at no additional loss of tax revenue.  See also, exhibits F.1 and F.2.

experienced with conservation donation easements. Since 2016, the IRS has established various strategic tactics intended to intimidate, dissuade, and harass the appraiser/witnesses including but not limited to the following:

   a. Issuing Summons for documents and other information already in the possession of the IRS.  These summonses often include in person IDRs which result in significant expense and use of resources by the appraiser.

   b. Issuing Notices from the IRS that individual agents have the unilateral authority to impose penalties under §6695A. Although this review process was originally designed to be impartial, impartiality is suspect when the decision-maker is an employee of the adversary, thereby quashing due process protections to appraisers (See; Exh A.).

   c. Issuing Notices from the IRS that if the appraiser does not waive the statute of limitations on §6695A penalties through December 31 of 2021 on 2017 appraisals, §6695A penalties will be imposed. (See exhibit C, attached hereto).[7]

---

[7] It is upon information and belief, that Plaintiffs are confident they can prove, that penalties will be assessed should an extension of the statute of limitations not be granted regardless of the evasive language of the attached letter.  It should also be noted that a similarly evasive letter sent to investors was deemed improper by the NDGA District Court.

d.  The IRS imposing penalties prior to commissioning an evaluative appraisal by a qualified appraiser as defined in 26 U.S.C. § 1.170A-17(a) and (b). The IRS abused its power by applying lesser standards to its penalty evaluation methods than those required of plaintiffs and by universally applying its systematic zero mandated valuation assessments to the projects that were appraised. (A copy of Treasury Regulation §1.170A is attached hereto as exhibit D).

e.  Ignoring the mandate of the Administrative Practices Act and the subsequent EO 13891, which requires agencies to be "transparent" when drafting and issuing guidance documents, by promulgating procedural rules that are designed to deny tax benefits for donations which occurred prior to the promulgation of the rule.  Specifically, the IRS refuses to be bound by USPAP standards for a qualified appraisal and further refuses to produce any guidelines it purports to follow in the determination of an appraiser's subjection to §6695A penalties.[8]

---

[8] §6695A allows for penalties of 125% of the fees charged by the appraiser to be assessed against the appraiser. Once assessed, the appraiser must prove his appraisal is not grossly overvalued in court and apply to have the penalties refunded often many years later.  While proving the integrity of the appraisal the appraiser is subjected to great expense and often disastrous destruction to the appraisers business and/or reputation including but not limited to being qualified as an expert.

f.  Ignoring the mandate of the Administrative Practices Act and the subsequent EO 13892, which requires agencies to avoid "unfair surprise", by pursuit of "gotcha" surprise attacks on previously accepted practices vs. a just and fair resolution of valuation differences utilizing the same rules of valuation.  Specifically, the appraiser is faced with having to prove his innocence after he is first unilaterally "adjudged guilty" and punished by an agent of the IRS. Said IRS agent is unqualified to make determination of value and instead is following unpublished and inappropriate "internal Rules" which are 1) contrary to Code and court decision regarding valuation methodology, 2) designed to universally reach a conclusion of zero valuation, and 3) could not have been discerned by the appraiser while conducting his/her work. The basis nor methodology of the determination are not made available to the defendant   Furthermore, the appraiser must first pay a fine for each appraisal before having any right to defend their work.[9]

---

[9] Peitioners agree that the these executive orders were revoked upon Mr. Biden's inauguration.  However, they were in place at the time the egregious acts occurred and simply clarified responsibility under the Administrative Practices Act and the United States Constitution.  See,  Pine Mountain Reserve, LLLP v. Comm'r, 19-11795, 11th Cir. Oct. 22, 2020 for comment on the methodology used by the IRS.

g.   Defying EO 13891 and EO 13892 by publishing threats of criminal

prosecution in relation to those providing services to taxpayers

making donations of conservation easements approximately one week

after the issuance of the Executive Orders.

Subsequent to these abusive and extremely burdensome investigative tactics,

Plaintiffs received or soon will receive a unilateral penalty under IRS regulation

6695A for 125% of the fees charged for each appraisal opinion rendered.[10]

These zero valuations are in spite of the statistic set forth above in the empirical

study (Exh. B) demonstrating that some 87% of qualified appraisals of

Conservation Easement Donations warrant no penalty after vetting by the courts

or other due process and 80% of the deductions were upheld by the courts.

Accordingly, Plaintiffs bring this suit on their own behalf and for the Putative

Class.  Plaintiffs assert five violations:

*(1)*  United States Statute 5 U.S.C § 702 provides a right of action to seek

relief from the actions of government agencies by parties wronged by those

agencies.  The IRS through Defendants has wronged Plaintiffs through threats,

intimidation, and the imposition of penalties without reasonable basis for the

---

[10] It is upon the information and belief that all appraisers who have completed appraisals for Conservation Easement Donations suffer the same fate.

penalties, without publishing guidance of any "rules" and/or "standards" governing their conclusions, and without ministerial checks and balances on the administration of those penalties.

(2) Conspiracy to interfere with civil rights.  Specifically, when two or more persons conspire for the purpose of impending, hindering, obstructing or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws…if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy whereby another is injured in his person or property, or deprived of having and exercising any right of privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation against one or more of the conspirators. 42 U.S.C. § 1985 (2) and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) *("Bivens")* as well as attorney's fees pursuant to 42 U.S.C. § 1988.  This right to seek redress against federal agents who violate established law was recently reaffirmed in ***Tanzin v. Tanvir***, SCOTUS, October 6, 295 *; 2020, Argued; December 10, 2020, Decided, No. 19-71.208 L. Ed. 2d 2020 U.S. LEXIS 5987 **; 141 S. Ct. 486; 2020 WL 7250100.

(3)  Conspiracy to deter testimony.  Specifically, § 1985 (2) prohibits in the pertinent portion two or more persons conspire to deter by force, intimidation or

threat, any party or witness in any court of the United States for attending such

court, or from testifying to any matter pending therein, freely, fully, and

truthfully, or to injure such party or witness in his person or property on account

of his having so attended or testified…

*(4)* Violation of 26 U.S.C. § 170(h), which charges the IRS with

administering 26 U.S.C. § 170(h).  The IRS has (1) failed to administer 26 U.S.C.

§ 170(h) through deliberate indifference to their ministerial duty under the

Administrative Practices Act of 1946 to administer the law diligently and fairly

regarding Conservation Easement Donations; and (2) committed violations of the

Fourth, Fifth, and Fourteenth Amendment protections for due process and equal

protection under the law under *Bivens v. Six Unknown Named Agents of the

Federal Bureau of Narcotics*, 403 U.S. 388 (1971) *("Bivens")*.

*(5) Violation of* "[T]he Eighth Amendment's protection against excessive or

cruel and unusual punishment.  This protection flows from the basic 'precept of

justice that punishment for wrongful action should be graduated and proportioned

to [the] offense.'" *Kennedy v. Louisiana*, 128 S. Ct. 2641, 2649 (2008) (quoting

*Weems v. United States*, 217 U.S. 349, 367 (1910)).  The Eighth Amendment of the

United States Constitution limits the government's power to force a person to

make a payment, whether in the form of cash or other form, as a punishment for an

offense. *Alexander v. United States*, 509 U.S. 544, 558-59 (1993) citing to

*Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U.S. 257, 265, 106 L. Ed. 2d 219, 109 S. Ct. 2909 (1989).

## JURISDICTION AND VENUE

### 2.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights) and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution under *Bivens.*

### 3.

Venue is proper in this district because it is the district in which at least one of the Defendants reside and "a substantial part of the events or omissions giving rise to the claim" occurred at the offices of the Internal Revenue Service located in Gainesville and Atlanta in the Northern District of Georgia. 28 U.S.C. § 1391.

Jurisdiction and venue are proper in this court.

## PARTIES:

### 4.

Plaintiffs are natural persons who are all experienced and licensed real estate appraisers.  In addition to other appraisal services for such projects as loans, condemnation proceedings, and investment purposes, they have provided appraisal services used in conjunction with the conservation of land and resources through partnerships which have elected to extinguish development rights forever by donating restrictive conservation easements on real property to a qualified charitable organization.  As discussed below, each plaintiff and the Putative Class were singled out for following USPAP best practices in forming an opinion for the value of the subject property at its highest and best use.  Each plaintiff has been assessed penalties, faced the threats of penalties, and/or subjected to demands for information/documents etc. already in the custody and control of the IRS without direction, reason, or process to resolve the harm short of litigation to prove the actions of the IRS were unfounded.

5.

Robert Fletcher . Mr. Fletcher received his broker's license in 1966 and has appraised and sold property for almost half a century in many Southeastern States including the Northern District of Georgia without a single legal or ethical conflict. Mr. Fletcher is a resident of Tennessee and his mailing address is PO Box 30381 Knoxville, TN 37930.

Thomas Spears is a Certified Real Estate Appraiser licensed in multiple States. He is an accredited Senior Appraiser with the American Society of Appraisers. His business address is 1860 SW Fountain view Blvd, Suite 330 St Lucie West, Port St Lucie, FL 34986.  He has performed appraisal for property in the Northern District of Georgia.  Some of his clients from the past ten years include ----State Governmental bodies as well as local municipalities that have utilized his services without issue or complaint.

Dennis Benson is a Georgia certified general appraiser.  Mr. Benson is an approved level III appraiser for the Georgia Dept. of Transportation.  Mr. Benson has owned Benson Appraisal services since 1995, with a current address of 2070 Ingleside Avenue Macon, GA  31204. Further, Mr. Benson is also qualified as an expert witness on this subject in several counties throughout Georgia.

All class members are licensed Real Estate Appraisers who have done appraisals for lands donated in fee or easement to qualified non-profit organizations. The class members each face significant and devastating 6695A penalties without direction from the court protecting their due process rights regarding the taking of their property, and their 8th Amendment protection against exorbitant punishment for unproven and likely non-substantial variances in opinion as to value.

6.

The Internal Revenue Service ("IRS") is the chief tax collection agency of the United States and is a division of the United States Department of the Treasury.  It is the Executive Branch Agency charged with *administering*[11] the Tax laws enacted by Congress.  The IRS has locations in Washington, DC as well as many other locations including 2888 Woodcock Blvd. in Atlanta, Georgia and 329 Oak Street, Gainesville, GA.

On or about January 22, 2020 the multi-tiered review process for §6695A penalties set forth in IRM 20.1.12.7.4 was eliminated by the IRS.  This change in policy by the IRS (said memorandum is attached hereto as exhibit A) removed all due process rights due appraisers subject to potential §6695A penalties.  Individual agents were left with full authority to assess these penalties with no training and/or supervision to protect the rights of the Appraiser Citizens.  Under the previous instructions of IRM, the review process included at least two qualified knowledgeable IRS appraisers.   This change manifested itself into penalties for all appraisers who provided services to partners donating conservation easements with §6695A penalties on every project they completed.

---

[11] The House of Representatives is responsible for originating all tax legislation under the Constitution.

The aforementioned checks and balances were replaced by the Conservation Easement Task Force led by the "Campaign Executive Champion", which provides no training or supervision to protect the rights of the Appraisers. It is the information and belief of plaintiffs that the Campaign Executive Champion is located in Washington, DC.  However, the name and office of this person or persons is highly guarded and unavailable to Plaintiffs or other inquiring citizens seeking guidance.

Defendant IRS by and through its "Campaign Executive Champion", agents and conspirators known and unknown and the Conservation Easement Task Force conspirators, both named and unnamed, are at all times material to this complaint, engaged in administering the tax policies, practices, customs, and laws enacted by Congress including but not limited to Congressional policies, practices, customs, and laws related to charitable donations of conservation easements. Defendants can be served by serving Acting Attorney General for the Northern District of Georgia, Kurt R. Erskine, 6th Floor, Richard B. Russell Building, Atlanta, GA 30303 and Attorney General of the United States, Merrick Garland, U.S. Department of Justice, 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

7.

Defendant Ifeoma Okeke is an agent of the IRS Large Business and International Division Eastern Compliance Practice Area, Team 1021, Atlanta Georgia.  She can be served at her work address of 2888 Woodcock Blvd, Atlanta GA.  At all times material to this complaint, she was engaged in administering the policies, practices, customs and regulations of the IRS including but not limited to those policies, practices, customs and regulations directly related to the Conservation Easement Task Force and the "Campaign Executive Champion". She was nor is a qualified appraiser.

Part of her activities included but were not limited to assessing §6695A penalties negligent of review processes protecting the Appraiser.  She requested statute extensions based on her proposal that she needed more time to evaluate. Rather than evaluate, she refused to countersign the form 872 and issued penalties when the need for further investigation was established by her very own request. Rather than investigate, she rejected her ministerial duty to investigate and issued penalties of $166,875.00 for 8 separate and distinct appraisals without any supporting report at all.

8.

Defendant, David S. Ables, CPA Revenue Agent is an agent of the IRS LB&I, NRC, Team 1051, 2888 Woodcock Blvd. Stop 699-D , Atlanta. GA

30341.  He can be served at his work address of 2888 Woodcock Blvd, Atlanta

GA.  At all times material to this complaint, he was engaged in administering the

policies, practices, customs and regulations of the IRS including but not limited to

those policies, practices, customs and regulations directly related to the

Conservation Easement Task Force and the "Campaign Executive Champion".

These investigations and ruling included investigations and reports on subject

property appraisals in the Northern District of Georgia, Gainesville, Division.

Part of his activities included but were not limited to assessing §6695A

penalties negligent of review processes protecting the Appraiser.  He requested

statute extensions based on his proposal that he needed more time to evaluate.

Rather than evaluate, he summarily issued penalties.  Rather than investigate, he

rejected his ministerial duty to investigate and issued penalties of at least

$65,901.00 in § 6695A penalties and interest without supporting evidence.  In fact,

on several of these actions the alleged supporting evidence was obtained 2 months

after the decision to assess was made.  In another, his assessment for penalty report

references Conservation Easement Donation for the entire report when the actual

appraisal was for a Fee Simple charitable donation involving no conservation

easement.  The same report rendered a ZERO value for fee simple land.  No

qualified land value expert of any ilk would honestly claim that a fee simple parcel

of land has ZERO value irrespective of whether it is donated to a charity.  Mr.

Ables was nor is a qualified appraiser.


9.

The Defendant, Tommy Waldrop, IRS Small Business, 440 Roper

Mountain Road, Suite E, Greenville, SC, 29615.  He can be served at his work

address listed infra.  At all times material to this complaint, he was engaged in

administering the policies, practices, customs, and regulations of the IRS including

but not limited to those policies, practices, customs and regulations directly related

to the Conservation Easement Task Force and the "Campaign Executive

Champion".

Part of his activities included but were not limited to assessing §6695A

penalties negligent of review processes protecting the Appraiser.  He requested

statute extensions based on his proposal that he needed more time to evaluate.

Rather than evaluate, he posed one question to those he was charged with

reviewing. "tell me why your appraisal is more likely than not correct".  This

question evidences little if any familiarity with qualified appraisal requirements,

USPAP, standard of valuation, real estate values, the facts and circumstances of the

land itself, market economics or anything else evidencing a truthful accurate

valuation assessment, thus, substantially infringing on the appraiser's due process rights.  He was nor is a qualified appraiser.


10.

Defendant, Melissa Ishee is a revenue agent for the IRS.  She may be served at her work address of 3848 West Columbus Dr., Tampa, FL  33607.  At all times material to this complaint, she was working out of the Atlanta and Gainesville, GA offices. At all times material to this complaint, she was engaged in administering the policies, practices, customs, and regulations of the IRS including but not limited to those policies, practices, customs and regulations directly related to the Conservation Easement Task Force and the "Campaign Executive Champion".  She neither is nor was a qualified appraiser.

Part of her activities included but were not limited to aiding and abetting the assessment of §6695A penalties negligent of review processes protecting the Appraiser.  Specifically, but not all inclusive, she acknowledged that each and every conservation easement donation for the years 2016, 2017 and 2018 would be audited and penalties would be assessed well before any investigation was completed or even begun on many of those assessed.

11.

Defendants, John/Jane Doe 1-15 are engineers, agents, or supervisors for the IRS at all times material to this complaint and were engaged in the administering of the policies, practices, customs, and regulations of the IRS including but not limited to those policies, practices, customs, and regulations directly related to the investigation, appraisal and valuation of charitable conservation easement donations.  They may be served at their various work addresses upon identification.

12.

Plaintiff brings this action against each defendant in both their official and individual capacities.

13.

At all times herein relevant and material to this civil action, Defendants acted toward Plaintiffs under color of the statutes, rules, customs, and usages of the United States of America, The Department of the Treasury, The Internal Revenue Service, and the Campaign Executive Champion.

## FACTS:

### 14.

The act creating qualified conservation contributions (26 U.S.C. § 170 (h) became law on December 17, 1980 and has been amended three times.  This law was enacted due to an increasing awareness of the diminishing quantity and quality of natural areas throughout the United States. (see attached map, Exh. E, which depicts the loss of natural area in just one southeastern state, GA, from 1940 until present). [12]

### 15.

Congress understood that the Government could not mitigate the loss of natural areas alone due to budget and management constraints.  Both the United States Government through the Forest Service, and the Department of Natural Resources in the several Southeastern States targeted by the IRS, have commonly refused donations of land from timber companies and others for the express reason, "we do not have the resources to manage the donation".  Thus, Sec. 170(h) effectuated a public/private partnership where (A) a qualified real property interest --the natural area; (B) could be donated to a qualified organization--the management; (C) exclusively for conservation purpose--protecting the natural area.

---

[12] Similar losses occurred in all Southeastern states.

Significant tax benefits were created by Congress in Sec. 170(h) in order to incentivize owners of qualified real property interests to participate in conserving land.

16.

Study after study has demonstrated the benefits of natural and green space. These benefits include substantial public benefit to air quality--trees and other vegetation can single-handedly reduce carbon levels to those of 100 years ago; cleaner water due to decreased erosion, natural filtering, and controlled runoff; mental health benefits and reduced crime resulting from exposure to more greenspace; and a positive effect on healing and the reduction of medical issues due to exposure to green space. Congress sought to support the public benefit of increasing green space and natural areas using Sec. 170(h), providing these benefits to the public at a fraction of the cost of Government purchase and management of comparable land (see footnote 5 for one typical example study). [13]

17.

Land is one of the most valuable assets a United States citizen might own. The most urgent conservation priorities are land holdings which are under near-term threat of exploitation. These will also typically be land carrying the highest

---

[13] In addition see Exhibit F which consists of two example studies showing the extensive benefit of Land Conservation to the public and its effectiveness toward President Biden's goal of conserving 30% of the land by 2030.

value.  Donations of such assets for conservation purposes will generate deductions much higher than for other less threatened land and much higher than most other charitable donations.  Only a handful of individuals in the United States have the combination of ownership of a "qualified real property interest", which offers sufficient "conservation purpose", inclination to preserve their property, and sufficient income to utilize the deduction incentives to participate in Sec. 170(h) contributions.  It is the plaintiffs' information and belief that fewer than one hundred individuals in the United States have the needed combination of qualified property interest, conservation purpose, and income required to fully utilize the deduction incentives.  Partnerships allow likeminded individuals to join together and affect the conservation by Congress and the tax incentives created to encourage this conservation under §170(h).

18.

When the interests in land of particularly wealthy philanthropists are donated, the IRS and its Campaign Executive Champion led task force do not apply any comparable scrutiny compared to donations by partnerships, nor do they consider the transactions as listed transactions, or apply the tactics set forth in IR 2019-182 as they do for partnership donations.  Based upon the actions and statements of Defendants, it is Plaintiff's information and belief that, routinely, Defendants consider the addition of family members or business partners to the

ownership entity of the donations as different from donations by partnerships of friends or strangers, without benefit of supporting law. Now, any group of individual taxpayers who, following the letter of the law, combine their resources to obtain a controlling interest in a qualified real property interest and then donate it to a qualified section 501(c)(3) organization for conservation purposes immediately have their efforts vilified under current IRS led task force policies and procedures.  Furthermore, they must comply with onerous, expensive, highly penalized filing requirements for listed transactions, and face intense and expensive audit scrutiny and investigation pursuant to the policy set forth in IR 2019-182(Exh. G).[14]  The hostile and threatening language of 2019-182 is highlighted in the January 2020 letter regarding appraisals and is set forth in Exhibit A.  Exhibit A produced a virtual blanket assessment of §6695A penalties against appraisers including but not limited to named plaintiffs who had valued a piece of property that was subject to a §170(h) deduction in 2016 and notices are currently being sent out on 2017 and 2018 appraisals.

19.

The IRS and its Campaign Executive Champion led task force apply an internal process and set of procedures and requirements in their examination of

---

[14] Also, another Fact is the IRS using inflammatory press releases and threatening letters to investors and appraisers and arbitrary determinations of value based on arbitrary standards deliberately intimidating scaring taxpayers away from participating in and enjoying the benefits of §170(h)

appraisals for §170(h) donations which differ from those they use for appraisals related to other matters such as eminent domain, and most significantly, differ from the appraisal procedures and requirements demanded of the taxpayer in claiming their §170(h) deductions (see, *Pine Mountain Reserve, LLLP* v. Comm'r) *infra.* Other appraisal applications used for tax purposes typically require the use of the Uniform Standards of Professional Appraisal Practice (USPAP) for guidance and direction regarding the best practices for appraising property. The IRS denies any obligation to follow USPAP nor will it provide any guidance as to an alternative to USPAP for procedures it deems superior or acceptable. Thus, appraisers are left with a guessing game as to best practices for the appraisal. This "hidden rules" game is especially dangerous considering the Exhibit A letter effectually removing any standards of guidance in assessing §6695A penalties other than an agent's decision du jour.

20.

The IRS issued IR-2019-182 expressly singles out the group of middle to upper income individual taxpayers who invest in an LLC, which votes to donate a qualified real property interest to a qualified organization for conservation purposes with no legal basis to make such a distinction. (*See,* IR 2019-182, Exh G).

21.

Prior to the issuance of IR 2019-182 the IRS created the Task Force to specifically single out "syndicated" easement donations; audit virtually every one of those easement donations made in 2016 and beyond; and summarily deny every deduction and assessing every appraiser.  Singling out the partnership easement donations for audit proved to be a costly and time-consuming effort.  Less costly and time consuming was a direct attack at the "appraisal heart" of conservation easement donations through Internal Revenue Code §6695A.  IRC §6695A provided a direct way to effectually eliminate §170(h) donations by intimidating those qualified appraisers whose work is the nexus of the donation valuation into no longer doing appraisals which might be used for §170(h) deductions.  The actions alleged herein evidence deliberate indifference by the IRS of its responsibility to fairly administer §170(h) and "hogtie" Congressional intent. The assessment of even a small number of §6695A penalties will put almost any appraiser[15] out of business.  The penalties are augmented by a long legal battle on limited funds wherein he/she must prove accurate appraisal of the property to salvage their career and reputation.  It is the information and belief of Plaintiffs that no audit was made or is planned to be made of donations made in the same

---

[15] The vast majority of appraisers and it is the information and belief that all who received the Exhibit B letters are very small businesses with only one or two appraisers.  None who received Exhibit B are larger businesses that can weather a protracted and expensive legal battle.

period by high wealth individual donators or their closely held family/business

qualified real property interests.

22.

Prior to the setting up of the task force, agents began intense scrutiny of

appraisals for conservation easement donations made by the targeted appraiser

class.  The years 2012 and 2014 saw the beginning of numerous audits of

conservation donation appraisers, who must be specifically trained and

experienced to be considered "qualified".   An appraisal by a qualified appraiser is

necessary to complete IRS Form 8283 and to quantify the tax deduction incentive

created by Congress as per Sec. 170(h).  Since that time, appraisers who have

worked years to achieve the required qualifications to prepare appraisals of

conservation easement donations have found themselves under intense scrutiny

based upon a presumption of guilt without substantiating evidence, and no legal

recourse but to pay a ruinous penalty and wait.  All the while the appraiser's

credibility as an appraiser and/or expert witness if not his very licenses are

tarnished or extinguished.[16]  An appraiser who is simply accused by the IRS of

grossly overstating or understating the value of a deduction can be immediately

penalized 125% of his/her fee, payable on demand.  This penalty is unilaterally

---

[16] The plaintiffs have an exemplary record of quality appraisals in both the Conservation Easement Fields and other land appraisal projects.

imposed by the IRS without due process of defense for the accused, and the penalty can only be refunded upon suit by the appraiser and ultimate resolution of the donation valuation by the courts, which can easily be 3-9 years after the unilateral penalty is imposed.

23.

A pattern and practice of the IRS, evidences that making a determination of zero ($0.00) value for the land donation for conservation purposes is a matter of standard policy and has resulted in numerous penalties assessed against experienced and professional appraisers including but not limited to Plaintiffs. These penalties sum into the hundreds of thousands of dollars and effectually put the appraiser, who dares to render a professional opinion based on USPAP of value of a donation made by a taxpayer partnership, out of business.  Only a small number of these penalties have been upheld subsequent to the long drawn out process of proving a donation through the courts despite tax court rules which require the agents to only assess these penalties when they know the determination is well grounded in fact.[17]  However, few if any appraisal businesses have survived the attacks even when their valuation opinions are eventually upheld and the appraiser is able to prove that the denial of their appraisal was not well grounded in

---

[17] Defendants are obligated under TAX COURT RULES 33(b) and 36(c) "that, to the best of the signer's knowledge, information and belief formed after reasonable inquiry, [any denials] are well grounded in fact…".

fact or based on sound appraisal principles.  The cumulative impact of the attacks

and the battle to counter the imposed severe punishment, devastates the appraiser's

career, reputation, and ability to earn a living.

24.

By late 2014 and 2015, audited donations were routinely being given

zero value determinations by the IRS, disallowing the entire charitable deduction

based on alleged noncompliance with newly claimed but unpublished

prerequisites.

Despite the foregone conclusion that the IRS will assess §6695A

penalties of most if not all conservation easement appraisal, the vast majority of

the valuations that proceeded through an independent valuation have failed to

result in an extreme level of reduction in donation values and even fewer warranted

the penalties that the IRS sought to achieve in their effort to stifle §170(h)

deductions/appraisals and support the IRS incentive programs.  (*See,* Exh B, for an

empirical study regarding valuations).

25.

The IRS does not obtain objective third-party appraisals or other

impartial determination as to the accuracy of the appraisal before assessing a

§6695A penalty.  The IRS consistently relies solely upon internal reports which do

not follow standard appraisal practices, and which were conducted by biased IRS

employees who are unqualified under the statute's own rules in support of their conclusions. (See, Exhibit D for qualified appraiser rule emphasis added page 4) Furthermore, these "Engineers" are incentivized to reach the IRS's preordained conclusion and violate their own internal mandates.  IRS employee "Engineers" and agents regularly fail to even visit the real estate being valued, or if they do visit, it is cursory at best, nor do they reveal processes/procedures followed to reach their valuation determination.[18]  One "Engineer" has even admitted in public that, in their opinion and contrary to the opinion reached in every qualified appraisal they reviewed, they had never seen a conservation donation which result in **any** diminution of the land's value.  Thus, "I have never seen an appraisal that was not grossly overvalued". This agent obviously never considered the many valuations upheld by the courts.

26.

Another tactic used to disqualify donations of qualified real property interests to a qualified charitable organization for conservation purposes via

---

[18] A typical example would involve the audit of Harbor Island, which at the time of the easement donation was subject to plans to extend the development of a high-end resort community. Ben Affleck was one of the numerous landowners in the existing exclusive island community.  Some seven years later, and subsequent to the recession of 2007/2008, an IRS Engineer was sent to view the property and, without walking the property but only peering over the fence, created a report that the only use for the property would be a "goat farm".  A similar instance involved parcels along a river with comparable sales of similar parcels on the river at $10,000.00 per acre.  The IRS Engineer, who was not an appraiser but a forester, returned a conservation value of $500.00 per acre based solely upon the timber value of the land. No qualified appraiser was involved in the valuation.

harassment and intimidation of appraiser witnesses is the use of an intentionally unreasonable and purposefully lengthy subpoena and litigation process.

The IRS routinely subpoenas witnesses and documents for which it has no need or purpose.  For example, the IRS subpoenaed the entire business records of an appraiser including the appraiser's records for appraisals done for both the GA DOT and property tax customers, neither of which had anything to do with donations of qualified real property interests to a qualified charitable organization for conservation purposes. Compiling records for the requested 6 years imposed disastrous hardship on the one-person appraiser's business. This appraiser, as an example, was forced to litigate the summons all the way to the 11th Circuit before obtaining relief.  The litigation was cripplingly expensive for the small business appraiser and even after the Court reduced the summons to appraisals of qualified real property interests where the appraiser signed the Form 8283, the IRS, showing further contempt for the rule of law and the IRS' own mandates, filed a frivolous motion for contempt against the taxpayer, claiming that all appraisals were not produced.[19]

---

[19] It should be noted that form 8283 complete with a copy of the appraisal must be filed with the IRS in each instance where a qualified real property interest is donated to a qualified charity for conservation purposes. I.e.: The IRS already had all the documents it requested.

27.

Each of the Plaintiff's herein and those of the Putative Class have received a letter similar to Exhibit C requiring them to extend the statute of limitations with regard to §6695A penalties through December of 2021 or through December of 2022 on tax year 2017 appraisals.  The reasons given for the need of the extensions despite some three years of audit time is to allow for additional evaluation.  The evidence will show that penalties will be and have been assessed regardless of the quality of the appraisal done or the granting of an extension to purportedly allow for further investigation but only on the basis of predetermined and unsubstantiated lack of value.  A typical example is Yellow River Shores, LLC.  The appraisal attached to the 8283 was performed by Plaintiff Benson.  In May of 2020, an extension was requested for further valuation.  Plaintiff was refused any explanation or basis for the penalties for which he would be assessed if he failed to extend the Statute of Limitations for the §6695A penalties was not extended until December of 2021.  Penalties were assessed June 24, 2020.  A letter dated August 28, 2020 from Internal Revenue Service appraiser, Peter Crane, states that Mr. Crane has completed his report.  Some 65 days after the decision to assess Mr. Benson was made.

This lack of due process prior to the taking of property reaches preposterous extremes including but not limited another example where the IRS Agent

determined that land with extensive mountain views, surrounded by development in the North Georgia Mountains has zero value as a **fee simple** donation.  It is preposterous to subject a citizen of these United States to penalties due to an unfathomable claim that a parcel of land is worth ***ZERO DOLLARS*** (Emphasis Added).  Appraisers Standing up for their rights per the statute of limitations will result in immediate Penalties of between $100,000.00 and $1,050,000.00 per appraiser, effectually imposing a death knell to careers spanning from 20 to almost 50 years of quality work.

# CAUSES OF ACTION

## COUNT ONE
### (Administrative Procedure Act – All Defendants)

28.

The allegations set forth hereinabove in Paragraphs 1 through 27 are restated as though fully set forth herein.

29.

United States Statute 5 U.S.C § 702 provides a right of action to seek relief from the actions of government agencies by parties wronged by those agencies. The Statute reads in pertinent part as follows:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* that any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.[20]

The actions by the Defendants as administrators of 26 U.S.C. § 170 (h) have

harmed and continue to harm Plaintiffs to the extent that the actions set forth above

evidence Defendants' deliberate indifference to their ministerial duty and deprive

appraisers who provide appraisal reports to groups of conservation minded

individuals who donate qualified real property interests to qualified charities for

conservation purpose the same procedural protections from penalty under § 6695A

afforded other appraisers.  Similar universal penalty policies are not applied to

those doing appraisals in other areas nor have similar threatening letters been sent

to appraisers of property but for those involving §170(h) deductions.  The IRS

through the creation of its "task force lead by the Campaign Executive Champion"

---

[20] See Exhibit H

has unilaterally broadened its authority and effectually usurped the authority of Congress and the United States Constitution such that it is able to impose adverse determinations without any factual basis.  Any review through the audit and appeals process is stifled by this unilaterally broadened authority and more particularly by the broadened policy of assessing penalties before the underlying valuation has fully navigated the course of due process. The process of assessing penalties upon the refusal to extend the statute of limitations eliminates any path to a good faith effort to resolve valuation.  This policy effectually renders the remedies offered taxpayers via the Courts impossible because the actions employed by the IRS leave the appraiser with little or no funds for litigation resulting in 3-9 years of delay and the accompanying demands by the IRS. Furthermore, the result of the administrative remedies is a forgone conclusion due to the IRS' unauthorized expansion of its regulatory powers regarding § 170(h) as applied to appraiser penalties.

30.

Following the issuance of Executive Order 13891, requiring transparency when drafting and issuing guidance documents, and Executive order 13892, requiring agencies to avoid "unfair surprise", the agency responded with IR 2019-182 which flies in the face of the Executive orders and Congressional intent

regarding § 170(h) by further ratcheting up the IRS' unauthorized expansion of its regulatory powers and its focused attack on appraisers engaged in legal conduct.

31.

The unauthorized expansion of regulatory powers regarding the administrative review of appraisals for donations of qualified real property interests to a qualified charity for conservation purposes by those other than the super wealthy has proximately harmed Plaintiffs and in turn harmed the public at large by stifling the most cost-effective means of protecting the environment.

Wherefore, the Plaintiffs state that they and the Putative Class they seek to represent have been damaged as a direct and proximate cause by defendants by:

1. The stifling and eliminating effect that Defendants' refusal to act in a transparent manner in issuing guidance documents or reviewing donations;

2. The stifling and eliminating effect of the Defendants' pattern and practice of "unfair surprise" regarding audit practices, and administrative determinations for donations; and most pertinently unsupported penalty assessments.

3. The loss of valuable lands to development that would have been conserved under the public policy set forth in 26 U.S.C. § 170 (h) but for the stifling effect of the unilateral, unauthorized, unpredictable,

and broadened regulations imposed by defendants that resulted in the elimination of appraisers qualified to do the required appraisals because of unsupported penalty assessments;

4. The costs of bringing this action including but not limited to reasonable attorney's fees.

5    Imposing these punitive penalties prior to ruling by an independent entity determining 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319 (1976).  at 335 rises to the level of an 8th Amendment violation against the Plaintiffs and the Putative class.


Wherefore, Plaintiffs and the Putative Class pray they be afforded the relief requested in the following Requests for Relief.

## COUNT TWO

### *42 U.S.C. § 1985(2)(3)*
### (Violation of Plaintiffs Statutory Rights—All Defendants)

32.

The allegations set forth hereinabove in Paragraphs 1 through 31 are restated as though fully set forth herein.

33.

Section 1985(2) and (3) of Title 42 United States Code provides in relevant part:

> If two or more persons conspire for the purpose of impending, hindering, obstructing or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws…if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy whereby another is injured in his person or property, or deprived of having and exercising any right of privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation against one or more of the conspirators.

While 42 U.S.C. 1985(2) does not specifically state that it applies to federal actors, it does refer to "the due course of justice in any state or territory. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) acknowledged a cause of action against individual federal agents who interfered with the due course of justice in a Federal investigation.  While *Bivens* is most closely in line with Sec. 1985's sister statute 42 U.S.C. § 1983, the purpose,

damages and violations are so closely related that it is unreasonable that 42 U.S.C.
§ 1985 (2) violations would be distinguishable.

34.

The misconduct of the Defendants clearly involved a conspiracy to deprive
citizens of the United States to group together and purchase a qualified real
property interest and donate same to a qualified charity for conservation purpose.
The means of this misconduct regarding these Plaintiffs is the imposition of
unsubstantiated penalty assessments to such an extent and with the stated intent,
that the Plaintiffs are to be "put out of business". IRS "Campaign Executive
Champion" and individual agents, engineers and officers in the task force
conspired and confederated together with a meeting of the minds and with
individual, class-based animus to deprive Plaintiffs and the Putative Class of equal
protection under the law.

35.

Specific actions included but are not limited to creating and publicly
promulgating an intentionally derogatory but legally undefined term for a certain
group of taxpayers, creating opaque and ambiguous rules "on the fly", which
applied only to what the Defendants labeled "syndicated easements" and the
appraisers who did appraisals for such; promulgation of unfair surprises that

applied only to "appraisers of syndicated easements"; abusive and extensive subpoenas for appraisers of  "syndicated easements"; blanket penalties for audits for every "syndicated easement appraisal" irrespective of quality of the appraisals; conspiring to prohibit due process review of the appraisal penalties.

36.

Defendants' actions proximately caused the Plaintiffs to be deprived of their rights to perform independent appraisals for property that might be used for the purpose of conservation, a program created and incentivized by Congress in 26 U.S.C.§ 170(h), thus, depriving Plaintiffs of their livelihood.  This deprivation includes other forms of livelihood including but not limited to appraisal for banks and government entities or being qualified as an expert witness to testify as to real estate values in a court of law or administrative proceeding.  Such a blanket deprivation is a penalty/punishment far in excess of the alleged misconduct.

37.

Wherefore, Plaintiffs and the Putative Class have experienced and continue to experience damages, including loss of Constitutional rights, interference with their liberty, delay and denial of government benefits, unequal treatment under color of law, and increased tax penalties, the expense of responding to the harassing tactics of the IRS, court costs and attorney's fees.

38.

The actions of the IRS agents, officers, and Engineers were willful, planned, coordinated, malicious, reckless, and intended to do harm to Plaintiffs and the Putative Class.

Wherefore, Plaintiffs and the Putative Class pray they be afforded the relief requested in the following Requests for Relief.

## COUNT THREE

### *42 U.S.C. § 1985(2)*
**(Intimidation of a Witness in Federal Proceeding—All Defendants)**

39.

The allegations set forth hereinabove in Paragraphs 1 through 38 are restated as though fully set forth herein.

40.

Section 1985(2) of Title 42 United States Code provides in relevant part:

If two or more persons in any State or Territory conspire to deter by force, intimidation, threat, any party, or witness in any court of the United States for attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified…

While 42 U.S.C. 1985(2) does not specifically state that it applies to federal actors, it does refer to "the due course of justice in any state or territory". *Bivens v.*

42

*Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388
(1971) acknowledged a cause of action against individual federal agents who
interfered with the due course of justice in a Federal investigation.  While *Bivens* is
most closely in line with Sec. 1985's sister statute 42 U.S.C. § 1983, the purpose,
damages, and violations are so closely related that it is unreasonable that 42 U.S.C.
§ 1985 (2) violations would be distinguishable from 42 U.S.C. § 1983.

41.

The misconduct of the Defendants clearly involved a conspiracy to
intimidate arguably the most critical witness in an action regarding 26 U.S.C. §
170(h) litigation--the appraiser.  The appraisal is the basis for determining the
amount of the deduction to be taken and evaluating the fairness of this tax
deduction constitutes the IRS' primary administrative responsibility in
administering §170(h) and §6695A.  Control of that appraiser witness is the
lynchpin for winning or losing IRS goals regarding valuation.  Exhibit's "A" and
"C" convey a clear message that you had better do what the IRS demands or your
business and ability to provide for yourself will "swim with the fishes".  By
definition, words to the effect of "do what I say or else" constitute threats and
intimidation, just as do the words "grant an extension of the statute of limitations
or else you will be penalized beyond what your business can survive".

> If two or more persons in any State or Territory conspire to deter by force, intimidation, threat, any party, or witness in any court of the United States for attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified…

Two or more Defendants have conspired to deter by intimidation, threat of financial penalties and other means Plaintiff's from testifying freely, fully, and truthfully to matters pending before Courts of the United States.  Defendants' actions constituted a willful and coordinated effort to prevent Plaintiffs from testifying in their own defense and disqualify them from testifying in the defense of others in a court of law or appraisals to be used in relation to tax filings through unsupported attacks on their credibility.

42.

Specific actions include but are not limited to those expressed in Exhibits A and C.  They also include overly broad summons and subpoenas for documents already provided and valuations for penalties without supporting outside, unbiased and/or independent assessment; promulgation of unfair surprises that applied only to "appraisers of syndicated easements"; blanket penalties for audits for every "syndicated easement appraisal" irrespective of quality of the appraisal or the facts associated with the appraisal; and conspiring to prohibit due process review of the appraisal penalties.

43.

Defendants' actions proximately caused the Plaintiffs to be intimidated pertinent to their duty and ability to testify in proceedings in the Courts of the United States regarding independent appraisals for property that might be used for the purpose of conservation, as created and incentivized by Congress in 26 U.S.C.§ 170(h), thereby, depriving Plaintiffs of their livelihood.

44.

Wherefore, Plaintiffs and the Putative Class experienced damages, including loss of Constitutional rights, interference with their liberty, delay and denial of government benefits, unequal treatment under color of law and increased tax burdens, the expense of responding to the harassing tactics of the IRS, court costs and attorney's fees.

45.

The actions of the IRS agents, officers, and Engineers were willful, coordinated, malicious, reckless, and intended to do harm to Plaintiffs and the Putative Class.

Wherefore, Plaintiffs and the Putative Class pray they be afforded the relief requested in the following Requests for Relief.

## COUNT FOUR

### *Bivens Action*
### (Violation of Plaintiffs Constitutional Rights—All Defendants)

46.

The allegations set forth hereinabove in Paragraphs 1 through 45 are restated as though fully set forth herein.

47.

The United States Supreme Court gives rise to a cause of action for damages against each of the Defendants in their individual capacity pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) when there is a violation of Constitutional rights of which a reasonable officer would be aware.  *Bivens* is available where there is a Constitutional violation, and the victim has no other remedy.  Other than damages for the Sec. 1985 (2) conspiracy pled above, Plaintiffs and the Putative Class have no statutory remedy for the systematic targeting of appraisers who conduct appraisals for persons partnering together to invest in qualified real property interests and donate those interests to qualified charities for the purpose of conservation based on the fact that the partners did not have sufficient wealth, income, and qualified real property to make a donation under § 170(h) without partnering with others.  This is a

constitutional tort and a clear violation of several provisions of the United States Constitution.

48.

The Equal Protection and Due Process Clauses of the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution prohibit the government from discriminating against persons or groups based on their class or status.  Plaintiffs were strongarmed into granting extensions, refused any explanations for penalties assessed against them, deprived of any real opportunity to defend their position as the penalties were predetermined without independent examination.  As detailed above, the IRS engaged in systematic discrimination of this group as defined by their income class and their conducting appraisal work for a partnership, which donated a qualified real property interest to a qualified charity for conservation purpose.

49.

The actions of IRS officers or agents listed as Defendants were intended to chill the rights of persons to partner for the purpose of taking advantage of the Congressionally mandated public policy of giving tax deductions to encourage conservation of valuable qualified real property interests in perpetuity under 26 U.S.C. § 170(h).  The IRS succeeded in chilling these Constitutionally protected rights through a broadly crafted set of policies and procedures, including but not

limited to the sending of intimidating letters threatening penalties sufficient to destroy the appraiser's livelihood, the assessment of penalties unilaterally without thorough and unbiased assessment, sufficient to destroy livelihood of some Plaintiffs by unilaterally broadening its authority to assess penalties under §6695A via the elimination of any independent and/or unbiased checks and balances.

50.

The Plaintiffs and Putative Class members were denied Due Process of the law by defendants' actions.  The protections and limitations upon the IRS set by the Constitution, Statutes, and Executive Order were systematically ignored to deprive Plaintiffs and the Putative Class the right to conduct appraisals of charitable donations of qualified real property interests and have those appraisals assessed by some fair and articulable standard and reviewed based on the merit of the appraisal.

51.

In sum, because of their willingness to conduct appraisals of properties that might desire to participate in the tax advantages and conservation purpose under §170(h) through partnering with other likeminded individuals, Plaintiffs and the Putative Class were subjected to harassment, intimidation, delay, discrimination, expense, intrusiveness, and embarrassment all as part of a scheme by IRS officers. agents and Engineers to suppress the use of §170(h).

52.

Wherefore, Plaintiffs and the Putative Class experienced damages, including loss of Constitutional rights, interference with their liberty, delay, and denial of government benefits, unlawful taking of their livelihood, unequal treatment under color of law, and increased tax burdens, the expense of responding to the harassing tactics of the IRS, court costs and attorney's fees.

53.

The actions of the IRS agents, officers and engineers were willful, coordinated, malicious, reckless, and intended to do harm to Plaintiffs and the Putative Class.

Wherefore, Plaintiffs and the Putative Class pray they be afforded the relief requested in the following Requests for Relief.

## **COUNT FIVE**

### *Eighth Amendment Violation*

54.

The allegations set forth hereinabove in Paragraphs 1 through 53 are restated as though fully set forth herein.

55.

The prohibition against cruel and unusual punishment of the Eighth

Amendment to the U.S. Constitution prohibits the government from imposing

punishment that is excessive and unwarranted.  Penalties such as fined are included

in the definition of punishment under the 8th Amendment.  The test for what

equates to an 8th Amendment violation is set forth in *Matthews, id,*:  1) the private

interest that will be affected by the official action; 2) the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if

any, of additional or substitute procedural safeguards; and 3) the Government's

interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail.

56.

The three-pronged test of *Matthews* is meet on all fours by the facts of the

instant case.  Wherein the IRS' agenda of discrediting and eliminating

conservation easement partnerships is furthered by the unbridled and unchecked

imposition of unilateral penalties which punish the Plaintiffs and the putative class

into effective extinction.

57.

In sum, because of the Plaintiff and Putative Class' willingness to conduct

appraisals of properties that might desire to participate in the tax advantages and

conservation purpose under §170(h) through partnering with other likeminded individuals, Plaintiffs and the Putative Class were subjected to severe penalties harassment, intimidation, delay, discrimination, expense, intrusiveness, and embarrassment all as part of a scheme by IRS officers agents and Engineers to suppress the use of §170(h) resulting in a punishment far in excess of any alleged wrongful action.

58.

Wherefore, Plaintiffs and the Putative Class experienced damages, including loss of Constitutional rights, interference with their liberty, delay, and denial of government benefits, unequal treatment under color of law, complete destruction of their business; loss of the ability to make a living and in many cases loss of their entire life savings.

59.

The actions of the IRS agents, officers and engineers were willful, malicious, reckless, and intended to do harm to Plaintiffs and the Putative Class.

Wherefore, Plaintiffs and the Putative Class pray they be afforded the relief requested in the following Requests for Relief.

## COUNT SIX

### *Class Action*

60.

The allegations set forth hereinabove in Paragraphs 1 through 59 are restated as though fully set forth herein.

61.

Plaintiffs ask this Court to certify a class action of all appraisers who conducted appraisals for properties that made donations of qualified conservation easements and/or other donations under 26 U.S.C. § 170(h) for the years 2016 through 2019.

62.

The class definition would include all individual appraisers and their associate advisors/experts subjected to or at risk of penalties under §6695A for appraisals conducted for the purpose of donating qualified real property interests to qualified charitable groups for conservation purposes. The class would include all members who received letters and demands substantially similar to Exhibit C and any of the abuses set forth above.

63.

This case meets all the prerequisites of Rule 23(a).

64.

This class is so numerous that joinder of all members is impracticable.  The exact number of all class members can only be determined through discovery.

65.

There are questions of law and/or fact common to the class.  All members have suffered the same sorts of constitutional and statutory violations set forth infra.  In other words, the IRS, through its own criteria and specifically IR 2019-182, Exhibit A and Exhibit C, defined the class and chose to discriminate on a class-wide basis against everyone who meets the class definition.

The claims of the named Plaintiffs are typical of the class as articulated above because the IRS intentionally chose to treat appraisers it considered participating in "syndicated easement appraisals" in the same or similar discriminatory fashion.

66.

Named Plaintiffs will fairly and adequately protect the interest of the class.  Plaintiff's interests are the same as other members of the class in holding the IRS responsible for its illegal activity, ensuring that it never happens again and being fairly compensated for the results of this illegal activity.

67.

The provisions of Rule 23 (b)(2) apply because the IRS has acted on grounds that apply generally to the class such that final injunctive relief would be appropriate for the class.

The provisions of Rule 23 (b)(3) are met in that the questions of law or fact common to class members predominate over individual questions and class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Individual questions are minimal.

All class members suffered the same violations of constitutional rights.

A single action adjudicating the legal rights of the Putative Class members would be more efficient than individual litigation.  As noted, class membership will likely run into the dozens if not hundreds, greatly inconveniencing the court and requiring needless duplication.  A single unified discovery process would greatly expedite this litigation and prevent needless, repetitive document productions and depositions from Defendants.

A single trial court ruling upon the constitutional and statutory issues would greatly improve judicial efficiency.  All these factors illustrate the benefits of concentrated litigation in a single forum.

Finally, Plaintiffs are unaware of any other pending litigation to date regarding the abusive activities of the IRS involving appraisers.  Thus, no other litigants' activities should be impaired.

WHEREFORE, Plaintiffs prays the following:

a) That an order be entered certifying this case as a class action and appointing its lawyers as class counsel.

b)  That this action be tried by a jury;

c) That judgment be entered in favor of the Plaintiffs and against the Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors to the extent allowed by law;

d)  that this Court enter an order enjoining Defendants from any further action that is not consistent with the mandates of EO 13891 and EO 13982 and the Administrative Practices Act.

e)  An order of injunction prohibiting the unauthorized expansion of regulatory powers regarding the administrative review of qualified real property interests to a qualified charity for conservation purposes and the appraisals thereof by requiring evaluations be made according to recognized and transparent methods properly set forth and applied equally such as was the case before the January 22, 2020 Memo.

f) An order of injunction prohibiting the further collection of §6695A penalties and/or assessment of same until such time as a court of competent jurisdiction determines said penalties valid.

g) That the Plaintiffs be awarded attorney's fees and reasonable expenses of litigation;

h) That all costs of this action be taxed against the Defendants;

i)  That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

This is the 2nd day of April, 2021.

Respectfully submitted,

*/S/ S. Fenn Little, Jr.*
S. Fenn Little, Jr.
Attorney for Plaintiffs
GA Bar Number: 454360

**FENN LITTLE, ESQ.**
**CONSERVATION DEFENSE GROUP, INC.**
3522 Ashford Dunwoody Rd. PMB 402
Brookhaven, GA  30319
Atlanta, GA  30309
Ph: 404-815-3100
Fax:  404-521-4029
fennlaw@outlook.com