## TAX PRACTICE

### tax notes federal

# Valuing Conservation Easements: An Empirical Analysis of Decided Cases

**by Jenny L. Johnson Ware**



Jenny L. Johnson Ware

Jenny L. Johnson Ware is a partner with Johnson Moore LLC in Chicago.

In this article, Johnson Ware reports the details of a recent study that analyzed court-decided conservation easement cases to determine the pervasiveness of abusive overvaluations and to test the success of taxpayers who effectively presented evidence that their claimed highest and best use of the before-easement property was reasonably probable.

Both the IRS and the Justice Department are vigorously attacking conservation easement deductions, relying on the notion that taxpayers are grossly inflating the value of the easements. Identifying syndicated conservation easement transactions as a listed transaction in Notice 2017-10, 2017-4 IRB 544, the IRS warned that it "intends to challenge the purported tax benefits from this transaction based on overvaluation of the conservation easement." When the IRS included syndicated conservation easements on its "Dirty Dozen" list of the worst tax scams in 2019, it again decried promoters who "obtain an inflated appraisal of the conservation easement."[1] Indeed, in announcing an injunction suit filed in December 2018, Richard E. Zuckerman, the Justice Department Tax Division's principal deputy assistant attorney general, alleged that the "fraudulent conservation easement shelters" at issue were "based on willfully false valuations."[2]

Alleged overvaluation of conservation easements is — and must be — the central theme of the enforcement efforts undertaken by the IRS and Justice Department, because allowing taxpayers a deduction for the fair market value of their donation is precisely what Congress intended. Historically, however, the IRS has succeeded in challenging the charitable deduction largely by scrutinizing the taxpayer's compliance with myriad technical requirements established in the regulations. Because taxpayers have learned to avoid those foot faults in documenting and reporting their donations, we are seeing an increasing number of cases in which the battle is focused solely on the value of the donated easement.

With alleged overvaluation of conservation easements so squarely in the government's crosshairs, and with the increasing frequency with which courts are likely to address the question of value, we undertook an empirical analysis of the cases in which courts have decided the value of conservation easements. The data we collected, which are described and analyzed in detail later, show that abusive overvaluation is not prevalent in the decided cases and that the identification of a reasonably probable highest and best use (HBU) of the property before easement is critical to the outcome at trial.

### Our Process

For our analysis, we identified cases involving charitable contributions of easements on real property that were decided in the last 10 years,

---

[1] IR-2019-47.

[2] Justice Department release 18-1672 (Dec. 19, 2018).

© 2019 Tax Analysts. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

For more Tax Notes® Federal content, please visit www.taxnotes.com.

Case 2:21-cv-00074-SCJ   Document 1-2   Filed 04/02/21   Page 2 of 7

© 2019 Tax Analysts. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

then narrowed the field in two ways. First, we included only conservation easements, not façade or other historic preservation easements. Second, we included only cases in which a court determined the value of a qualified real property interest, not cases in which the court denied the deduction for other reasons. We captured five key numbers from each case: (1) the value claimed on the taxpayer's return, (2) the value asserted by the IRS in its post-audit notice, (3) the value claimed by the taxpayer's expert(s) at trial, (4) the value claimed by the IRS's expert(s) at trial, and (5) the value determined by the court. We then compared those values in a variety of ways, using different tables to present the outcomes.

We also used the data to test our hypothesis that taxpayers who effectively present evidence that their claimed HBU of the property before easement was reasonably probable are likely to succeed in defending the deduction and avoiding valuation-related penalties. To do so, we reviewed each case to identify the HBU claimed by the taxpayer, the HBU asserted by the IRS, and the HBU adopted by the court. For those cases in which the court agreed with the taxpayer's HBU, we then compared the value claimed on the taxpayer's return with the value determined by the court and computed that ratio to determine whether the taxpayer would be subject to valuation-related penalties.

### Statistical Universe

Table 1 identifies the cases in our defined universe in reverse chronological order and lists the five values gathered from each decision. When more than one expert testified for a party, we averaged the values reached by the experts for that side.

There are two cases that we identified as potentially relevant but then excluded from our analysis because the court reached the issue of value only after denying the deduction on other grounds. In *PBBM-Rose Hill*,[3] the Fifth Circuit upheld the Tax Court's determination that the taxpayer was not entitled to any deduction because of failure to comply with the perpetuity mandate in section 170(h)(1)(C), and it also upheld the Tax Court's determination that the value of the easement was only $100,000. In *Wendell Falls*,[4] the court disallowed the deduction on grounds that (1) the taxpayer donated the easement with an expectation of receiving a substantial benefit, and alternatively (2) that the tax deduction should be zero because placing the easement did not diminish the value of the property.

There is one case that we identified as potentially relevant but then excluded from our analysis because the court did not determine a final value. In *Hughes*,[5] the taxpayer claimed a deduction of $3.1 million, and the IRS allowed $1,992,375 of that deduction. At trial, the IRS's expert testified that the easement had nominal value between zero and $238,135. The court determined a before-easement value of $2,391,350 and then concluded that the easement did not diminish the value of the property enough for the taxpayer to claim a deduction any larger than the $1,992,375 already allowed by the IRS.

There are three other cases that we excluded because they involved a charitable deduction for a bargain sale of a fee simple interest rather than a conservation easement.[6]

### What's the Big Picture?

As reflected in Table 1, in cases in which the court decided the value of a conservation easement, returns filed by taxpayers reported deductions totaling $92,728,417, while the total value found by the courts was $74,669,396. The values reported by taxpayers were approximately 124 percent of the values upheld by the courts. Put another way, the courts sustained more than 80 percent of the deduction values reported by the taxpayers.

### Who Came Closest in the First Round?

Table 2 compares (1) the difference between the value claimed on the taxpayer's return and the value determined by the court with (2) the

---

[3] *PBBM-Rose Hill Ltd. v. Commissioner*, 900 F.3d 193 (5th Cir. 2018).

[4] *Wendell Falls Development LLC v. Commissioner*, T.C. Memo. 2018-45.

[5] *Hughes v. Commissioner*, T.C. Memo. 2009-94.

[6] *See Cave Buttes LLC v. Commissioner*, 147 T.C. 338 (2016); *Davis v. Commissioner*, T.C. Memo. 2015-88; and *Crimi v. Commissioner*, T.C. Memo. 2013-51.

For more *Tax Notes® Federal* content, please visit www.taxnotes.com.

© 2019 Tax Analysts. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

**Table 1. Values Gathered in Each Case**

| Case Name | Value on Return | Value on IRS Notice | Taxpayer Value At Trial | IRS Value At Trial | Court Value |
|---|---|---|---|---|---|
| *Pine Mountain Preserve*[a] | $4,100,000 | $0 | $9,110,000 | $449,000 | $4,779,500 |
| *McGrady*[b] | $2,350,000 | $0 | $2,080,000 | $290,000 | $1,491,896 |
| *Palmer Ranch*[c] | $23,940,000 | $6,975,000 | $23,940,000 | $6,975,000 | $23,940,000 |
| *SWF Real Estate*[d] | $7,398,333 | $2,477,100 | $7,350,000 | $4,040,000 | $7,350,000 |
| *Schmidt*[e] | $1,600,000 | $195,000 | $1,600,000 | $480,000 | $1,152,445 |
| *Mountanos*[f] | $4,691,500 | $0 | $4,691,500 | $0 | $0 |
| *Butler*[g] | $4,684,000 | $0 | $4,111,200 | $2,360,000 | $2,458,300 |
| | $191,000 | $0 | $243,700 | $104,000 | $139,400 |
| | $2,550,000 | $0 | $2,000,000 | $1,480,000 | $1,637,600 |
| | $2,936,000 | $0 | $2,700,000 | $1,740,000 | $2,312,800 |
| *Esgar*[h] | $2,274,500 | $0 | $1,991,588 | $27,000 | $149,051 |
| *Boltar*[i] | $3,245,000 | $42,400 | $3,245,000 | $31,280 | $42,400 |
| *Trout Ranch*[j] | $2,179,849 | $485,000 | $2,200,000 | $0 | $560,000 |
| *Kiva Dunes*[k] | $30,588,235 | $0 | $30,888,235 | $23,506,558 | $28,656,004 |
| **Total** | **$92,728,417** | | | | **$74,669,396** |

[a]*Pine Mountain Preserve v. Commissioner*, T.C. Memo. 2018-214. The court did not value conservation easements donated in 2005 and 2006 because it determined that neither of those easements was a qualified real property interest. The table reflects the value of the 2007 conservation easement only.

[b]*McGrady v. Commissioner*, T.C. Memo. 2016-233. The parties and the court valued both a fee simple interest in one tract and a conservation easement over a second tract. The values in the table are only those for the conservation easement. The IRS's expert valued the easement between $190,000 and $390,000, so we used the average, $290,000, in our analysis. Two experts testified for the taxpayer and asserted values of $2.7 million and $1.46 million, respectively.

[c]*Palmer Ranch Holdings Ltd. v. Commissioner*, T.C. Memo. 2016-190, on remand from 812 F.3d 982 (11th Cir. 2016), *aff'd in part*, *rev'g in part*, *and remanding* T.C. Memo. 2014-79. The values in the table reflect that the Tax Court, on remand from the 11th Circuit, adopted the taxpayer's value of the easement. The Tax Court originally valued the easement at $19,955,014.

[d]*SWF Real Estate LLC v. Commissioner*, T.C. Memo. 2015-63.

[e]*Schmidt v. Commissioner*, T.C. Memo. 2014-159.

[f]*Mountanos v. Commissioner*, T.C. Memo. 2013-138.

[g]*Butler v. Commissioner*, T.C. Memo. 2012-72. There were four easements at issue and the court analyzed each separately. The table therefore reflects the five key values for each easement separately. Moreover, the taxpayer had two experts for the first easement and three experts for the second easement. The two experts' values for the first easement were $2,258,100 and $5,964,300, respectively; the table reflects the average of those two values, $4,111,200. The three experts' values for the second easement were $88,000, $390,500, and $252,600, respectively. The IRS notice disallowed the deductions in their entirety.

[h]*Esgar Corp. v. Commissioner*, T.C. Memo. 2012-35. There were three separate taxpayers who each claimed a deduction, but the subject properties and easements were so similar that the court analyzed them together. The total value of the three easements is reflected in each column of the table.

[i]*Boltar LLC v. Commissioner*, 136 T.C. 326 (2011).

[j]*Trout Ranch LLC v. Commissioner*, T.C. Memo. 2010-283.

[k]*Kiva Dunes Conservation LLC v. Commissioner*, T.C. Memo. 2009-145.

difference between the value asserted by the IRS in its post-audit notice and the value determined by the court.

If the four easements in *Butler* are counted separately, the taxpayer's return value was closer to the court's value 10 out of 14 times, or 71.4

For more *Tax Notes® Federal* content, please visit www.taxnotes.com.

© 2019 Tax Analysts. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

Table 2. Comparison of Parties' Valuations and Court's Valuation

| Case Name | Difference Between Value on Return and Court Value | Difference Between Value in IRS Notice and Court Value | Party Closest to Court Value |
|---|---|---|---|
| *Pine Mountain Preserve* | -$679,500 | $4,779,500 | Taxpayer |
| *McGrady* | $858,104 | $1,491,896 | Taxpayer |
| *Palmer Ranch* | $0 | $16,965,000 | Taxpayer |
| *SWF Real Estate* | $48,333 | $4,872,900 | Taxpayer |
| *Schmidt* | $447,555 | $957,445 | Taxpayer |
| *Mountanos* | $4,691,500 | $0 | IRS |
| *Butler* (easement 1) | $2,225,700 | $2,458,300 | Taxpayer |
| *Butler* (easement 2) | $51,600 | $139,400 | Taxpayer |
| *Butler* (easement 3) | $912,400 | $2,312,800 | Taxpayer |
| *Butler* (easement 4) | $623,200 | $2,312,800 | Taxpayer |
| *Esgar* | $2,125,450 | $149,051 | IRS |
| *Boltar* | $3,202,600 | $0 | IRS |
| *Trout Ranch* | $1,619,849 | $75,000 | IRS |
| *Kiva Dunes* | $1,932,231 | $28,656,004 | Taxpayer |

percent. The percentage is similar if *Butler* is treated as one case, with the taxpayer's return value closer to the court's value eight out of 11 times, or 72.7 percent. There are only five cases in which the value in the IRS's post-audit notice was more than zero: *Palmer Ranch*, *SWF Real Estate*, *Schmidt*, *Boltar*, and *Trout Ranch*. In those five cases, the taxpayer's return value was closer to the court's value three out of five times, or 60 percent.

### Whose Trial Expert(s) Came Closest?

Table 3 compares the difference between (1) the value claimed by the taxpayer's expert at trial and the value determined by the court with (2) the difference between the value claimed by the IRS's expert at trial and the value determined by the court.

Excluding *Pine Mountain Preserve*, in which the court intentionally valued the easement at the midpoint between the values offered by the experts, the taxpayers' experts at trial were closer to the court's value in six out of the 13 cases, or 46 percent, while the IRS experts were closer for the remaining seven out of 13 cases, or 54 percent.

### Would Valuation-Related Penalties Apply?

Table 4 shows the ratio of the value claimed on the taxpayers' returns to the value determined to be correct, as described in section 6662(e) for determining whether a taxpayer is liable for a valuation misstatement penalty, and it notes whether the penalty was imposed.[7]

### How Did the Taxpayer's HBU Fare at Trial?

Table 5 reflects the before-easement HBU of the property as identified by the taxpayer's trial expert, whether the IRS agreed, and whether the court valued the easement based on the HBU identified by the taxpayer or by the IRS.

### How Does Persuasive HBU Impact Trial Outcome?

Table 6 compares the value stated in the taxpayer's return with the value determined by the court in cases in which the court agreed with the HBU identified by the taxpayer's expert.

---

[7]This article covers only the valuation misstatement penalty and does not capture whether any other penalties or additions to tax applied.

**498**                                                         *TAX NOTES FEDERAL*, JULY 22, 2019

For more *Tax Notes® Federal* content, please visit www.taxnotes.com.

Table 3. Comparison of Experts' Valuations and Court's Valuation

| Case Name | Difference Between Taxpayer Value at Trial and Court Value | Difference Between IRS Value at Trial and Court Value | Party (Expert) Closest to Court Value |
|---|---|---|---|
| *Pine Mountain Preserve* | $4,330,500 | $4,330,500 | Tie |
| *McGrady* | $588,104 | $1,201,896 | Taxpayer |
| *Palmer Ranch* | $0 | $16,965,000 | Taxpayer |
| *SWF Real Estate* | $0 | $3,310,000 | Taxpayer |
| *Schmidt* | $447,555 | $672,445 | Taxpayer |
| *Mountanos* | $4,691,500 | $0 | IRS |
| *Butler* (easement 1) | $1,652,900 | $98,300 | IRS |
| *Butler* (easement 2) | $104,300 | $35,400 | IRS |
| *Butler* (easement 3) | $362,400 | $157,000 | IRS |
| *Butler* (easement 4) | $387,200 | $572,800 | Taxpayer |
| *Esgar* | $1,842,538 | $122,051 | IRS |
| *Boltar* | $3,202,600 | $11,120 | IRS |
| *Trout Ranch* | $1,640,000 | $560,000 | IRS |
| *Kiva Dunes* | $2,232,231 | $5,149,446 | Taxpayer |

Of the 10 cases in which the court agreed with the taxpayer's HBU for the property before the easement (counting each *Butler* easement as a separate case), only three of those easements mathematically qualified for a substantial valuation misstatement penalty, and none of them qualified for a gross valuation misstatement penalty. Note that for each of the three easements that potentially qualified for a misstatement penalty, the court chose not to impose it because the taxpayers demonstrated that the value claimed on the return was based on a qualified appraisal made by a qualified appraiser, and the taxpayers made a good-faith investigation of the value of the contributed property.

### Conclusions

Abusive overvaluation of conservation easements is not pervasive in the decided cases. Overall, the courts sustained more than 80 percent of the values reported by taxpayers. Notably, the value determined by the court was closer to the value claimed on the taxpayer's return than to the value in the IRS notice more than 70 percent of the time, largely because the IRS took the initial position that the value was zero for approximately 65 percent of the easements. Expert testimony offered by the IRS at trial, however, came closer to the value determined by the court 54 percent of the time. This shift supports a theory that far fewer resources would need to be spent litigating conservation easement cases if the IRS made a good-faith effort to discern the correct value at the audit stage.

The data also support our hypothesis that taxpayers who can effectively present evidence regarding the HBU of the property before the easement are likely to have success defending the deduction and avoiding penalties. The most extreme overvaluations occur — and trigger penalties — when the courts find that the before-easement HBU claimed by the taxpayer is not reasonably probable. Realistic evaluation of the HBU before easement by both taxpayers and the IRS would significantly reduce the magnitude of the disputes over value.

© 2019 Tax Analysts. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

For more *Tax Notes® Federal* content, please visit www.taxnotes.com.

© 2019 Tax Analysts. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

### Table 4. Valuation-Related Penalties

| Case Name | Taxpayer Value Per Return | Value Determined By Court | Ratio Taxpayer Value per Return/Court Value | Valuation Misstatement | Penalty |
|---|---|---|---|---|---|
| *Pine Mountain Preserve* | $4,100,000 | $4,779,500 | 86% | No | |
| *McGrady* | $2,350,000 | $1,491,896 | 158% | Substantial | Not imposed — reasonable cause |
| *Palmer Ranch* | $23,940,000 | $23,940,000 | 100% | No | |
| *SWF Real Estate* | $7,398,333 | $7,350,000 | 101% | No | |
| *Schmidt* | $1,600,000 | $1,152,445 | 139% | No | |
| *Mountanos* | $4,691,500 | $0 | — | Gross | Gross |
| *Butler* (easement 1) | $4,684,000 | $2,458,300 | 191% | Substantial | Not imposed — reasonable cause |
| *Butler* (easement 2) | $191,000 | $139,000 | 137% | No | |
| *Butler* (easement 3) | $2,550,000 | $1,637,600 | 156% | Substantial | Not imposed — reasonable cause |
| *Butler* (easement 4) | $2,936,000 | $2,312,800 | 127% | No | |
| *Esgar* | $2,274,500 | $149,051 | 1526% | Gross | Not imposed — reasonable cause |
| *Boltar*[a] | $3,245,000 | $42,400 | 7653% | Gross | Not at issue |
| *Trout Ranch* | $2,179,849 | $560,000 | 389% | Gross | Not at issue |
| *Kiva Dunes* | $30,588,235 | $28,656,004 | 107% | No | |

[a]No penalty was asserted in the final partnership administrative adjustment; the court denied the IRS's motion to add a valuation misstatement penalty after the petition and answer had been filed with the Tax Court.

500                                                                                                                                 *TAX NOTES FEDERAL*, JULY 22, 2019

For more *Tax Notes® Federal* content, please visit www.taxnotes.com.

### Table 5. Success of Taxpayers' Claimed HBU

| Case Name | HBU — Taxpayer | HBU — IRS | HBU — Court |
|---|---|---|---|
| *Pine Mountain Preserve* | Residential development | Undeveloped | Residential development |
| *McGrady* | Residential development — multiple lots | Residential development — single "estate" | Residential development — multiple lots |
| *Palmer Ranch* | Multifamily residential development | Low-density residential development | Multifamily residential development |
| *SWF Real Estate* | Low-density residential development | Low-density residential development | Low-density residential development |
| *Schmidt* | Residential subdivision | Residential subdivision | Residential subdivision |
| *Mountanos* | Vineyard and residential | Undeveloped / recreational | Undeveloped / recreational |
| *Butler* | • Residential development<br>• Farm and plantation | • Residential development<br>• Agriculture and recreation | • Residential development<br>• Farm and plantation |
| *Esgar* | Gravel mining | Agriculture | Agriculture |
| *Boltar* | Condominium development | Single-family residential | Single-family residential |
| *Trout Ranch* | 40-lot residential subdivision | 21-lot shared ranch | 21-lot shared ranch |
| *Kiva Dunes* | Residential subdivision | Residential subdivision | Residential subdivision |

### Table 6. Comparison of Values When the Court Agreed With the Taxpayer's HBU

| Case Name | Taxpayer Value per Return | Value Determined By Court | Ratio Taxpayer Value Per Return/Court Value |
|---|---|---|---|
| *Pine Mountain Preserve* | $4,110,000 | $4,779,500 | 86% |
| *McGrady* | $2,350,000 | $1,491,896 | 158% |
| *Palmer Ranch* | $23,940,000 | $23,940,000 | 100% |
| *SWF Real Estate* | $7,350,000 | $7,350,000 | 100% |
| *Schmidt* | $1,600,000 | $1,152,445 | 139% |
| *Butler* (easement 1) | $4,684,000 | $2,458,300 | 191% |
| *Butler* (easement 2) | $191,000 | $139,000 | 137% |
| *Butler* (easement 3) | $2,550,000 | $1,637,600 | 156% |
| *Butler* (easement 4) | $2,936,000 | $2,312,800 | 127% |
| *Kiva Dunes* | $30,888,235 | $28,656,004 | 107% |

■

© 2019 Tax Analysts. All rights reserved. Tax Analysts does not claim copyright in any public domain or third party content.

For more *Tax Notes® Federal* content, please visit www.taxnotes.com.